UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JENNIFER LUKAS and JOYCE WATTERS,<br><br>        Plaintiffs,<br><br>  v.<br><br>UNITED BEHAVIORAL HEALTH AND IBM MEDICAL AND DENTAL EMPLOYEE WELFARE BENEFIT PLANS,<br><br>        Defendants.<br>_____/ | NO. CIV. 2:09-2423 WBS-DAD<br><br><u>ORDER</u> |

----oo0oo---

After a bench trial in this action on March 10, 2011, the court issued a memorandum constituting its findings of fact and conclusions of law, (Docket No. 57), and then entered judgment in favor of defendants, United Behavioral Health ("UBH") and Dental Employee Welfare Benefit Plans ("Plan"), (Docket No.

1

58).  Plaintiffs appealed the judgment.  (Docket No. 61.)  The Ninth Circuit Court of Appeals reversed the judgment, holding that defendants were obligated to award benefits to plaintiffs for Lukas's residential treatment for an eating disorder and co-morbid conditions at Alta Mira Treatment Center ("Alta Mira"). (Mem. at 6 (Docket No. 68).)  The Ninth Circuit remanded with instructions to the district court to direct an award of benefits to plaintiffs and to conduct any further proceedings consistent with its order.  (Id.)  It also transferred consideration of plaintiffs' motion for attorney fees to the district court. (Docket No. 69.)

One of the programs offered by the Plan is IBM Managed Mental Health Care Program ("MMHC").  (Administrative Record ("AR") 00242.)  Plaintiffs are enrolled in IBM PPO Plus, and Alta Mira is an out-of-network provider.  The Plan provides that "[e]ligibility for coverage of dependents, health care providers, facilities and treatments and supplies is determined solely by the provisions of the Plan."  (AR 00301, 00772.)  Under the MMHC portion of the Plan, payment of benefits for out-of-network mental health inpatient care is covered at fifty percent of the usual and prevailing rate, after payment of a $250 deductible has been made, for up to thirty days.  (AR 00245, 00247, 00712, 00717.)  One-and-a-half residential days equals one inpatient day.  (AR 00405.)

"ERISA generally preempts common law theories of contract law."  Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1444 (9th Cir. 1995); see DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 412 (9th Cir. 1994) (noting that "[t]he Ninth Circuit has

2

held that ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract" and declining to imply federal promissory estoppel remedy for claims regarding an ERISA plan (internal quotation marks and citation omitted)). "Because 29 U.S.C. § 1102 provides that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument,' courts have [also] held that oral agreements or modifications cannot be used to contradict or supersede the written terms of an ERISA plan." Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 986 n.2 (9th Cir. 1997); see Parker v. BankAmerica Corp., 50 F.3d 757, 769 (9th Cir. 1995) ("[U]nder ERISA, a party cannot maintain a claim for equitable estoppel if recovery would contradict the written provisions of the plan.").

The Ninth Circuit has allowed exceptions where the application of general contract principles is not inconsistent with ERISA's purpose, such as with federal equitable estoppel. Cinelli, 61 F.3d at 1444. But, "consistent with the ERISA's strong preference for the written plan, we do not allow an estoppel claim to lie where it would contradict the written terms of the plan." Id. In adopting this rule, the Ninth Circuit approved the reasoning of the Fifth Circuit in Rodrigue v. W. & S. Life Ins. Co., 948 F.2d 969, 971 (5th Cir. 1991), that the ERISA writing requirement protects a plan's actuarial soundness by precluding plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan. Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d

3

812, 822 (9th Cir. 1992).

Plaintiffs ask the court to depart from the plain language of the Plan and award benefits for Lukas's stay at Alta Mira at the rate for in-network providers, which for mental health care is unlimited after a $250 deductible.[1] (See AR 00245-46, 00711.)  Plaintiffs offer several theories why they should receive benefits at this higher rate.  First, they contend that defendants did not impose any of the plan-mandated benefit restrictions and paid one-hundred percent of the cost of Lukas's treatment at Sober Living by the Sea ("Sober Living"), an out-of-network provider of residential mental health care.  Second, they claim that UBH told them that it could arrange for an "accommodation"--or contract with an out-of-network provider--with Alta Mira, as it did with Sober Living.  Third, plaintiffs contend that Watters, Lukas's mother, was informed by multiple representatives of defendants that inpatient mental health benefits "are unlimited" (but that the location and length of treatment depend on clinical review) and that she was shown a plan summary comparison charts indicating that benefits were not limited to thirty days.

Of paramount importance, plaintiffs do not address ERISA's preemption of common law contract doctrine and offer no theory allowing the court to deviate from the plain language of

---

[1] "Lukas" in any citation references the bates stamps on documents produced by plaintiffs during the litigation.  The documents were filed under seal on December 23, 2010. (Docket No 35.)
The daily rate paid by plaintiffs for Lukas's stay at Alta Mira was $570.  (Lukas 7.)  Defendants did not argue that this rate is not the "usual and prevailing rate" for the treatment Lukas received.

4

the Plan.  Secondarily, as defendants point out, plaintiffs cite nothing in the administrative record to support their contention that defendants paid for Sober Living in full.  In contrast, the record indicates that Sober Living may have accepted a fee less than the amount charged for its services.[2]  (AR 01410, 01412, 01415.)  The UBH documentation which plaintiffs indicate reveals that they were told that inpatient mental health benefits "are unlimited" is perhaps the most troubling: it could be read to suggest that inpatient mental health benefits provided by non-network providers are unlimited.  (See AR 01347.)  However, the documentation is unclear whether the case manager made that statement regarding in-network providers, non-network providers, or failed to make a distinction.  Moreover, this conversation occurred while Lukas was at Sober Living; it was not in relation to her stay at Alta Mira.  (Id.)

Plaintiffs identify two additional references to accommodation in the record.[3]  On October 12, 2007, the UBH case manager told Watters that Casa Palmera was not an in-network provider, but noted that there had been accommodations in the past.  (AR 01383.)  However, the entry immediately proceeding it, for October 11, 2007, states that Watters was aware of the out-

---

[2] Defendants also note that some of the bills from Sober Living were disallowed because they were not authorized by UBH. (AR 01415-16.)

[3] Several other references to accommodation or a contract identified by plaintiffs are in handwritten notes not in the administrative record.  There is no indication as to who made the notes and, for the reasons explained below, the court may not consider evidence outside of the administrative record in deciding the award of benefits.  Regardless, they do not reveal any statements by defendants that Lukas's stay at Alta Mira would be covered at the in-network rate.

5

of-network benefit and that if such benefits are to be accessed, notification would have to come first.  (Id.)  On October 23, 2007, the notes indicate that the case manager and Watters discussed the accommodation process and benefit availability, but the case manager explained that benefits were contingent on medical necessity and an assessment report from the receiving facility.  (AR 01385.)

Other evidence in the record contradicts plaintiffs' claim that they understood Lukas's treatment at Alta Mira would be covered at the in-network provider rate.  The entry on October 24, 2007, reports that Lukas was scheduled to be admitted to Alta Mira on October 28 and that Watters was aware that the out-of-network benefit would apply.  On October 29, the case manager told Watters that because Alta Mira is out-of-network, Lukas's "case" would be closed and UBH would no longer be managing her benefits.  (AR 01386.)  UBH sent plaintiffs a letter on November 11, 2007, confirming that UBH would not authorize services at the in-network benefit level and that reimbursement would be considered according to the non-network benefit level.  (AR 00966.)

Even if plaintiffs had advanced a theory to allow the court to disregard the Plan's plain language and defendants fully covered the cost of Lukas's stay at Sober Living, the record does not show defendants ever indicated to plaintiffs that unlimited mental health benefits would be available for Lukas's stay at Alta Mira or that they promised to make an accommodation for her stay there.  At the most, the evidence in the record reveals several discussions of the accommodation process.  It does not

establish that defendants indicated that care from an out-of-network provider would not be limited as set forth in the Plan.

Defendants object to the court's consideration of additional evidence offered by plaintiffs that is outside the administrative record. Generally, a court may not consider such evidence when reviewing a claim to recover benefits under the terms of an ERISA plan. Banuelos v. Constr. Laborers' Trust Funds for S. Cal., 382 F.3d 897, 904 (9th Cir. 2004). The two exceptions to this rule are when a court determines whether a plan administrator's decision was affected by a conflict of interest and when the standard of administrative review is de novo. Id. Plaintiffs do not ask the court to consider this extrinsic evidence for the purposes of determining that there is a conflict of interest and the standard of review in this action is abuse of discretion. (See Mem. at 2 (noting that parties agree that district court correctly applied abuse of discretion standard).) Courts have also allowed the consideration of extrinsic evidence when construing ambiguous plan provisions. McDaniel v. Chevron Corp., 203 F.3d 1099, 1114 n.10 (9th Cir. 2000). But there is no evidence here--and plaintiffs have not argued--that any provision of the Plan is ambiguous.

Even considering the evidence plaintiffs point to--two benefit summary charts--it does not suggest that defendants told plaintiffs that they would be entitled to benefits exceeding the limitations in the Plan for out-of-network providers. The benefits summary charts indicate that benefits for out-of-network providers are limited to thirty days. (See Lukas 62-64.) There is no discrepancy between the Plan documents and these summaries.

Thus, while it is true that "[c]ourts will generally bind ERISA defendants to the more employee-favorable of two conflicting documents-even if one is erroneous," Banuelos, 382 F.3d at 904, there are no conflicting documents in this case.

Although plaintiffs did not bring a claim for equitable estoppel, the court nonetheless addresses the theory. The requirements of a federal estoppel claim relating to an ERISA plan are a material misrepresentation, reasonable and detrimental reliance upon the representation, extraordinary circumstances, that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally, that representations were made involving an oral interpretation of the plan. Renfro v. Funky Door Long Term Disability Plan, 686 F.3d 1044, 1054 (9th Cir. 2012); Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir. 1996).

Plaintiffs cannot meet these requirements. First, as explained above, there is no convincing evidence that defendants stated that benefits for Lukas's stay at Alta Mira, an out-of-network provider, would not be limited as set forth in the Plan or that they promised that an accommodation would be provided. Second, plaintiffs identified no ambiguity in the Plan. As explained above, the plan summary charts produced by plaintiffs track the benefit restrictions in the Plan for non-network providers and do not create any ambiguity. Third, plaintiffs point to no extraordinary circumstances. Finally, "[a] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the

unambiguous language of the plan itself." <u>Greany v. W. Farm Bureau Life Ins. Co.</u>, 973 F.2d 812, 822 (9th Cir. 1992). Here, plaintiffs' request for repayment of benefits as if Alta Mira were an in-network provider would contradict the plain language of the Plan. Any request for benefits based on an estoppel theory therefore fails.

IT IS THEREFORE ORDERED that plaintiffs be awarded benefits for Lukas's stay at Alta Mira at fifty percent of the usual and prevailing rate for forty-five days for a total of $12,825.00 (($570.00/2) X 45). Plaintiffs shall follow the procedures set forth in Local Rule 293 for recovering their attorney fees. Any request for prejudgment interest on the award of benefits is to be determined on plaintiffs' application for attorney fees.

DATED: March 15, 2013

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE